## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| NOKIA SOLUTIONS AND NETWORKS US LLC AND NOKIA SOLUTIONS AND NETWORKS OY, | No. 2:16-cv-00754-JRG-RSP |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| HUAWEI TECHNOLOGIES CO. LTD. AND HUAWEI DEVICE USA, INC., | |
| Defendants. | |

## COMPLAINT

1.      Nokia Solutions and Networks US LLC and Nokia Solutions and Networks Oy (collectively, "NSN"), by and through its undersigned counsel, seeks declarations and judgments that Huawei Technologies Co. Ltd. and Huawei Device USA, Inc. (collectively, "Huawei") infringe U.S. Patent Nos. 9,185,688 ("the '688 patent"), 9,148,877 ("the '877 patent"), and 8,437,416 ("the '416 patent") (collectively, "NSN's Patents-In-Suit").

## NATURE OF THE ACTION

2.      This is an action for patent infringement.  Huawei has infringed and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe NSN's Patents-In-Suit.

## THE PARTIES

3.     NSN US is a company organized and existing under the laws of the State of Delaware with substantial business operations at 6000 Connection Drive, Irving, Texas 75039-2600 and 601 Data Drive, Plano, Texas 75075.

4.     NSN Oy is a foreign corporation, having its headquarters at Karaportti 3, 0210 Espoo, Finland.

5.     Upon information and belief, Huawei Technologies is a Chinese corporation with its principal place of business at Bantian, Longgang District, Shenzhen, People's Republic of China.

6.     Upon information and belief, Huawei Device is a corporation organized under the laws of Texas, having a principal place of business at, 5700 Tennyson Parkway, Suite 500, Plano, Texas 75024.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of these claims under, without limitation, 28 U.S.C. §§ 1331 and 1338(a).

8.     Venue is appropriate because, *inter alia,* Huawei Technologies has consented to the propriety of venue in this Court by filing its claims for patent infringement in this Court, in response to which these claims were originally asserted.  Further, on information and belief, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Huawei has transacted business in this district, and has committed and/or induced acts of patent infringement in this district.

9.     This Court has personal jurisdiction over Huawei Technologies because, at a minimum, Huawei Technologies has subjected itself to same by filing the actions for alleged

2

infringement that these claims were severed from.  This Court has personal jurisdiction over Huawei Device because, at a minimum, Huawei Device is organized under the laws of Texas, and maintains its principal place of business in this jurisdiction.  Huawei has also filed suits against other parties in this jurisdiction.  Further, on information and belief, Huawei is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.  Further, Huawei has engaged in business activities including transacting business in this District and purposefully directing its business activities, including the sale of the Accused Products in this District, and the sale or offer for sale of goods to this District to aid, abet, or contribute to the infringement of third parties in this District.  For example, Huawei—either directly or through those acting on its behalf, such as authorized retailers—offers its Accused Products (defined below) for sale in this District.  *See* http://www.bestbuy.com/site/huawei-google-nexus-6p-4g-with-32gb-memory-cell-phone-unlocked-aluminum/ 4796300.p?id=bb4796300&skuId=4796300 (showing Nexus 6P phones available at Longview, Texas location as of 6/09/16 at 11:00 a.m.).

## **FACTUAL BACKGROUND**

10.     NSN and its affiliates are multinational data networking and telecommunications equipment companies.  NSN provides a mobile broadband and services portfolio for designing and building communications networks, operating and maintaining them, and enhancing subscribers' experiences.

11.     NSN's parent company was formed in 2006 as Nokia Siemens Networks, a joint venture between Siemens Communications and Nokia's Network Business Group.

12.     Nokia Siemens Networks quickly became a global telecommunications powerhouse, rapidly establishing and expanding cellular networks across the world.  In 2008, Nokia Siemens Networks launched its LTE solution for radio and core networks, which included a line of base stations called the Flexi Base Stations.  LTE-capable networks began running on the Flexi Base Stations in late 2008, which allowed GSM/EDGE, WCDMA/HSPA/HSPA+ and LTE standards to run concurrently in a single unit.

13.     By 2010, Nokia Siemens Networks had become the world leader in LTE infrastructure.  That year, Nokia Siemens Networks increased its significant footprint in the United States by acquiring the wireless-network division of Motorola.

14.     In 2013, Nokia acquired Siemens' entire stake in Nokia Siemens Networks. Following the acquisition, the company was rebranded "Nokia Networks" in 2014.[1]

15.     NSN and its affiliates, among other things, works on developing, providing, and maintaining LTE networks that support major U.S. mobile carriers, such as T-Mobile.

## TECHNOLOGICAL BACKGROUND

16.     NSN's Patents-In-Suit, described in more detail below, are a reflection of the breadth of NSN's extensive dedication and investment in the technology and development of standardized communication protocols.

17.     The development of standardized communication protocols has allowed the cellular industry to move from first generation cellular phones, which were only capable of

---

[1] For a brief period of time following the transaction, the company was known publicly as "Nokia Solutions and Networks."  This remains the legal name of the various Nokia Networks corporate entities.

4

making voice calls, to fourth generation ("4G") cellular phones that are capable of receiving and transmitting data at very high rates.

18.     Long Term Evolution ("LTE") is the 4G technology that was developed by the Third Generation Partnership Project ("3GPP") to meet the ever-growing data demands of cellular users.  LTE development began in 2004, and the first versions of the LTE standards were finalized in December 2008.  A follow-on to LTE, called LTE-Advanced ("LTE-A"), has also been developed.

19.     One of the major changes in LTE was to depart from the Code Division Multiple Access ("CDMA") schemes that dominated third generation ("3G") technologies.  To achieve the increase in data rates, LTE opted to use Orthogonal Frequency Division Multiple Access ("OFDMA") to allocate resources for downlink transmissions, and Single Carrier Frequency Division Multiple Access ("SC-FDMA") to allocate resources for uplink transmissions.  By using these access schemes, LTE provides significant flexibility for the network infrastructure to optimize resource allocations to accommodate network conditions.

20.     NSN was a major contributor to the development of LTE, and the inventions described in NSN's Patents-In-Suit were conceived as solutions to problems that arose during that development.  Each of the NSN Patents-In-Suit is essential to the LTE standards and has been declared essential to those standards.

## THE STANDARDIZATION PROCESS

21.     Many companies presently manufacture wireless cellular devices.  In order to enable devices manufactured by different entities to interoperate, standards-setting organizations ("SSOs") have formed to promulgate industry standards—communication protocols that can be adopted by different manufacturers to enable interoperability between their devices.

22.     The LTE standard, as well as other mobile radio standards, was developed under the patronage of ETSI.  ETSI is a non-profit institution that was founded in 1988 through an initiative of the European Commission by several companies active in mobile communications with the objective to develop a common mobile radio standard for Europe.  On information and belief, ETSI currently has approximately 750 members from 64 countries.  NSN and Huawei are both members.

23.     In order to assist with the usage of patented technology in standardized communication protocols, ETSI adopted an Intellectual Property Rights Policy (the "ETSI IPR Policy") in 1994 to assist in balancing the interests of patent holders and of manufacturers of standard-compliant products.

24.     The ETSI IPR Policy contains rules concerning the disclosure and licensing of patents that are considered essential to practice its standards.  Section 6.1 of the ETSI IPR Policy provides that:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions under such IPR . . . .

25.     As stated above, NSN's Patents-In-Suit are each essential to the LTE standard and were declared essential to the LTE standard pursuant to the ETSI IPR Policy.

26.     NSN has complied with all of its FRAND obligations arising from NSN's participation in the SSOs.

27.     NSN and Huawei have engaged in licensing discussions regarding their respective patents declared as essential to cellular communication standards, and NSN has made numerous

offers to license its declared essential patents to Huawei on terms that are fair, reasonable, and non-discriminatory.  To date, Huawei has been unwilling to accept all such offers.

28.     NSN has even offered to enter into arbitration to resolve its dispute with Huawei regarding their respective declared essential patents.  Such an arbitration would have determined the appropriate royalty rate applicable to each parties' respective declared, essential patent portfolio, and avoided Huawei's suit against T-Mobile as it pertains to NSN's equipment, as well as the need for NSN to assert claims against Huawei.  This offer remains pending, but to date Huawei has been unwilling to agree to arbitration, and continues to use NSN's declared, essential patents without paying compensation to NSN.

## OVERVIEW OF NSN'S PATENTS-IN-SUIT

29.     On November 10, 2015, the '688 patent was duly and legally issued for an invention titled, "Providing Improved Scheduling Request Signaling with ACK/NACK or CQI." A true and correct copy of the '688 patent is attached hereto as Exhibit A.

30.     On September 29, 2015, the '877 patent was duly and legally issued for an invention titled, "Providing Improved Scheduling Request Signaling with ACK/NACK or CQI." A true and correct copy of the '877 patent is attached hereto as Exhibit B.

31.     The '688 and '877 patents provide for improvements to LTE's physical uplink control channel ("PUCCH").   In LTE, a user equipment transmits uplink control data, including scheduling requests, acknowledgements, and negative acknowledgements to network nodes, *i.e.*, eNB, on the PUCCH.  Such signals may be transmitted at the same time, leading to resource element assignment complications.  The '688 and '877 patent provide procedures for determining which signals are to be transmitted simultaneously and allocating resource elements for transmission of those signals.

32.     On May 7, 2013, the '416 patent was duly and legally issued for an invention titled, "Coordinated Cyclic Shift and Sequence Hopping for Zadoff-Chu, Modified Zadoff-Chu, and Block-wise Spreading Sequences."  A true and correct copy of the '416 patent is attached hereto as Exhibit C.

33.     The '416 patent is generally directed to improved cross-correlation and the reduction of co-channel interference in LTE, particularly with regard to uplink transmissions from a UE to eNB.  In LTE, multiple UEs transmit uplink data on a shared channel called the Physical Uplink Shared Channel, and each UE transmits demodulation reference signals ("DM-RSs") that allows an eNB to properly distinguish and decode the uplink data coming from a specific UE.  DM-RSs employ special sequences called Zadoff-Chu sequences, wherein multiple UEs in a given cell can share the same Zadoff-Chu sequence while keeping the orthogonality by using a cyclic shift specific to each UE.  However, Zadoff-Chu sequences of different lengths may occasionally have large cross-correlation properties, and not all cyclic shifts of the same Zadoff-Chu sequences are perfectly orthogonal against each other, thereby causing co-channel interference.  The '416 patent solves this problem by providing a coordinated cyclic shift hopping scheme to reduce co-channel interference between UEs.

34.     Nokia Solutions and Networks Oy owns the entire right, title, and interest to the Patents-In-Suit.  NSN US is the exclusive licensee of the Patents-In-Suit.

35.     NSN's Patents-In-Suit are essential to the LTE standards.  Accordingly, each of NSN's Patents-In-Suit has been declared essential to the LTE standards and NSN has undertaken, in accordance with the applicable rules of the ETSI, to grant licenses under each of NSN's Patents-In-Suit on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions.

36.     The '688 and '877 patents were declared essential on June 11, 2009, when the application to a family member, U.S. Application Serial No. 12/290547, was declared essential.

37.     The '416 patent was declared essential on June 21, 2011 when a family member, U.S. Patent Publication No. 2008/0298433, was declared essential.

## COMMON ALLEGATIONS

38.     On information and belief, without license or permission from NSN, Huawei has infringed, literally and/or under the doctrine of equivalents, and continues to infringe, one or more claims of each of NSN's Patents-In-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271, including but not necessarily limited to one or more of making, using, selling and offering to sell, in the United States, and importing into the United States, LTE compliant devices, such as mobile phones and tablets, including, but not limited to Huawei's Nexus 6p, Honor 5x, P8 lite, GX8, Ascend Mate 2, SnapTo, and Mediapad T1 8.0 Pro (hereinafter, the "Accused Products").

39.     On information and belief, Huawei induces infringement by others of one or more claims of NSN's Patents-In-Suit.  For example, Huawei takes active steps to promote and encourage the use of the Accused Products in a manner that connects to (and operates on) the LTE networks and complies with the LTE standards.  On information and belief, Huawei is aware of NSN's Patents-In-Suit, at least as of the date NSN provided claim charts to Huawei detailing the infringement of NSN's Patents-In-Suit and/or at least as of the filing of this lawsuit, and knows or should have known that the inducing acts described herein constitute infringement of NSN's Patents-In-Suit.

40.     Huawei takes specific steps to actively induce others—such as, for example customers and operators—to use the Accused Products.  For example, and without limitation, on

information and belief, Huawei actively induces direct infringement of one or more claims of NSN's Patents-In-Suit, by others, by promoting, instructing, offering, and encouraging others to use the Accused Products in a manner that connects to and operates on the LTE networks. Furthermore, Huawei also actively promotes the use of the LTE functionality, including for example and without limitation, by way of authorized resellers, customer service and sales representatives, and/or its internet sales websites.  Such active promotion includes advertising that the Accused Products are LTE capable and can achieve the speeds associated with LTE networks.  And, on information and belief, Huawei knows or should know that such sales and promotions actively induce others to directly infringe one or more claims of NSN's Patents-In-Suit, including for example, by prompting them to use the Accused Products in an infringing manner.

41.     As another example, Huawei provides and/or authorizes the providing of instruction manuals, product manuals, and other materials (*e.g.*, with the sale of a product and/or offered on its website) for customers and other users of the Accused Products, and for example, on information and belief, shows how to make use of the Accused Products on an LTE network. Additionally, on information and belief, Huawei knows or should know that such materials and instructions actively induce others to directly infringe one or more claims of NSN's Patents-In-Suit, including by instructing them to use the Accused Products.

42.     Further, Huawei and/or its authorized retailers operate stores throughout the United States, including stores in this District, such as the Best Buy stores in Longview and Tyler, Texas, that upon information and belief, sell, promote, and instruct the use of the Accused Products, by for example, selling and/or offering for sale the Accused Products configured to connect and operate on an LTE network.

43.     Additionally, Huawei makes, uses, sells, offers for sale, and/or imports into the United States LTE compliant products that contribute to the infringement of one or more claims of NSN's Patents-In-Suit when used by customers and other users for their benefit.  For example, Huawei—or those on its behalf—sells Accused Products specifically to make use of the devices LTE network capabilities.  The Accused Products are offered for sale and sold to customers in the United States by Huawei (or an authorized reseller), including through its website and various storefronts, and when used as instructed by Huawei, practice the LTE standards and therefore infringe NSN's Patents-In-Suit which are essential to LTE.

44.     The Accused Products are specifically configured to—by Huawei or under its authorization—for example, use the devices' capabilities to practice the LTE standards and to operate on LTE networks.  On information and belief, once configured, the Accused Products and/or components within the Accused Products are at least material and do not have any substantial uses other than to practice the LTE standards and to operate on LTE networks.  On information and belief, Huawei knows the Accused Products and/or components included therein, are especially made or especially adapted for infringement of NSN's Patents-In-Suit, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

## COUNT ONE

### (Infringement of U.S. Patent No. 9,185,688)

45.     NSN incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

46.     NSN incorporates by reference the infringement contentions related to the '688 patent that were served pursuant to Local Patent Rules 3-1 and 3-2 on June 16, 2016.

47.     In violation of 35 U.S.C. § 271, Huawei has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '688 patent, including but not limited to claim 14, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes one or more claims of the '688 patent.  Such unlicensed products by way of example and without limitation, include the Accused Products and/or any other Huawei products that are compliant with the LTE standards.  In addition, on information and belief, users of the Accused Products infringe the '688 patent by using the Accused Products on LTE networks.

48.     Huawei has knowledge of the '688 patent and has known of the '688 patent and its infringement thereof since at least April 21, 2016, when NSN provided Huawei with a claim chart detailing Huawei's infringement.

49.     On information and belief, Huawei takes active steps to induce infringement of one or more of the claims of the '688 patent by others, including its retailers, distributors, and end users, and Huawei takes such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products on LTE networks.  Additionally, by example and without limitation, Huawei actively induces infringement by instructing, promoting, encouraging, and/or providing promotional materials detailing how to use the Accused Products on LTE networks.  Additionally, specific examples of steps taken in furtherance of its active inducement by others are set forth above which are incorporated by reference.

50.     On information and belief, Huawei knows or should know that such activities induce others to directly infringe one or more claims of the '688 patent, including for example, by prompting them to use the Accused Products on LTE networks.  As such, Huawei has knowingly induced and continued to induce direct infringement of the '688 patent by its retailers, distributors, and end users.

51.     On information and belief, Huawei contributes to the infringement of the '688 patent by others, including its customers, network users, and authorized resellers.  Acts by Huawei that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Huawei of the Accused Products.  The Accused Products and/or the components configured to communicate in accordance with the LTE standard are not suitable for substantial noninfringing use.  On information and belief, Huawei knows such Accused Products to be especially adapted to infringe by, including but not limited to, using the Accused Products on the LTE network and that such mobile devices are not suitable for substantial noninfringing use.  Additionally, specific examples of steps taken in furtherance of its contributory infringement are set forth above which are incorporated by reference.

52.     By way of at least this Complaint and the claim charts sent to Huawei on April 21, 2016, Huawei knows of the '688 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of the '688 patent by third parties.

53.     Huawei undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '688 patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the date that NSN provided Huawei with claim charts and at least since the date of the filing of this action, Huawei has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement

of the '688 patent, and that the '688 patent is valid.  On information and belief, Huawei could not reasonably, subjectively believe that its actions do not constitute infringement of the '688 patent, nor could it reasonably, subjectively believe that the patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Huawei has continued its infringing activities.  As such, Huawei willfully infringes the '688 patent.

54.     Huawei's infringement of the '688 patent has caused and continues to cause damage to NSN and NSN is entitled to recover from Huawei FRAND compensation as a result of Huawei's wrongful acts through the date of trial in an amount subject to proof at trial, and such other relief as may be appropriate, including specifically, but not limited to an appropriate prospective royalty for any infringement by Huawei after judgment is entered.

55.     Huawei's infringement of the '688 patent is exceptional and entitles NSN to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO

### (Infringement of U.S. Patent No. 9,148,877)

56.     NSN incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     NSN incorporates by reference the infringement contentions related to the '877 patent that were served pursuant to Local Patent Rules 3-1 and 3-2 on June 16, 2016.

58.     In violation of 35 U.S.C. § 271, Huawei has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '877 patent, including but not limited to claim 14, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes one or more claims of the '877 patent.  Such unlicensed products by way of example and without limitation, include the Accused Products and/or any other Huawei products that are compliant with the LTE standards.  In addition, on information and belief, users of the Accused Products infringe the '877 patent by using the Accused Products on LTE networks.

59.     Huawei has knowledge of the '877 patent and has known of the '877 patent and its infringement thereof since either (i) at least April 21, 2016, when NSN provided Huawei with a claim chart detailing Huawei's infringement of the '877 patent's family or (ii) the filing of this Complaint.

60.     On information and belief, Huawei takes active steps to induce infringement of one or more of the claims of the '877 patent by others, including its retailers, distributors, and end users, and Huawei takes such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products on LTE networks.  Additionally, by example and without limitation, Huawei actively induces infringement by instructing, promoting, encouraging, and/or providing promotional materials, detailing how to use the Accused Products on LTE networks.  Additionally, specific examples of steps taken in furtherance of its active inducement by others are set forth above which are incorporated by reference.

61.     On information and belief, Huawei knows or should know that such activities induce others to directly infringe one or more claims of the '877 patent, including for example, by prompting them to use the Accused Products on LTE networks.  As such, Huawei has

knowingly induced and continued to induce direct infringement of the '877 patent by its retailers, distributors, and end users.

62.     On information and belief, Huawei contributes to the infringement of the '877 patent by others, including its customers, network users, and authorized resellers.  Acts by Huawei that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Huawei of the Accused Products.  The Accused Products and/or the components configured to communicate in accordance with the LTE standard are not suitable for substantial noninfringing use.  On information and belief, Huawei knows such Accused Products to be especially adapted to infringe by, including but not limited to, using the Accused Products on the LTE network and that such mobile devices are not suitable for substantial noninfringing use.  Additionally, specific examples of steps taken in furtherance of its contributory infringement are set forth above which are incorporated by reference.

63.     By way of at least this Complaint and the claim charts sent to Huawei on April 21, 2016, Huawei knows of the '877 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of the '877 patent by third parties.

64.     Huawei undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '877 patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the date that NSN provided Huawei with claim charts and at least since the date of the filing of this action, Huawei has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '877 patent, and that the '877 patent is valid.  On information and belief, Huawei could not reasonably, subjectively believe that its actions do not constitute infringement of the '877 patent, nor could it reasonably, subjectively believe that the patent is invalid.  Despite that knowledge

and subjective belief, and the objectively high likelihood that its actions constitute infringement, Huawei has continued its infringing activities.  As such, Huawei willfully infringes the '877 patent.

65.     Huawei's infringement of the '877 patent has caused and continues to cause damage to NSN and NSN is entitled to recover from Huawei FRAND compensation as a result of Huawei's wrongful acts through the date of trial in an amount subject to proof at trial, and such other relief as may be appropriate, including specifically, but not limited to an appropriate prospective royalty for any infringement by Huawei after judgment is entered..

66.     Huawei's infringement of the '877 patent is exceptional and entitles NSN to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT THREE

### (Infringement of U.S. Patent No. 8,437,416)

67.     NSN incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

68.     NSN incorporates by reference the infringement contentions related to the '416 patent that were served pursuant to Local Patent Rules 3-1 and 3-2 on June 16, 2016.

69.     In violation of 35 U.S.C. § 271, Huawei has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '416 patent, including but not limited to claim 14, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes one or more claims of the '416 patent.  Such unlicensed products by way of example and without limitation, include the Accused Products and/or any other Huawei products that are compliant with the LTE standards.  In addition, on information

and belief, users of the Accused Products infringe the '416 patent by using the Accused Products on LTE networks.

70.     Huawei has knowledge of the '416 patent and has known of the '416 patent and its infringement thereof since at least April 21, 2016, when NSN provided Huawei with a claim chart detailing Huawei's infringement.

71.     On information and belief, Huawei takes active steps to induce infringement of one or more of the claims of the '416 patent by others, including its retailers, distributors, and end users, and Huawei takes such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products on LTE networks.  Additionally, by example and without limitation, Huawei actively induces infringement by instructing, promoting, encouraging, and/or providing promotional materials, detailing how to use the Accused Products on LTE networks.  Additionally, specific examples of steps taken in furtherance of its active inducement by others are set forth above which are incorporated by reference.

72.     On information and belief, Huawei knows or should know that such activities induce others to directly infringe one or more claims of the '416 patent, including for example, by prompting them to use the Accused Products on LTE networks.  As such, Huawei has knowingly induced and continued to induce direct infringement of the '416 patent by its retailers, distributors, and end users.

73.     On information and belief, Huawei contributes to the infringement of the '416 patent by others, including its customers, network users, and authorized resellers.  Acts by

Huawei that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Huawei of the Accused Products.  The Accused Products and/or the components configured to communicate in accordance with the LTE standard are not suitable for substantial noninfringing use.  On information and belief, Huawei knows such Accused Products to be especially adapted to infringe by, including but not limited to, using the Accused Products on the LTE network and that such mobile devices are not suitable for substantial noninfringing use.  Additionally, specific examples of steps taken in furtherance of its contributory infringement are set forth above which are incorporated by reference.

74.     By way of at least this Complaint and the claim charts sent to Huawei on April 21, 2016, Huawei knows of the '416 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of the '416 patent by third parties.

75.     Huawei undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '416 patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the date that NSN provided Huawei with claim charts and at least since the date of the filing of this action, Huawei has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '416 patent, and that the '416 patent is valid.  On information and belief, Huawei could not reasonably, subjectively believe that its actions do not constitute infringement of the '416 patent, nor could it reasonably, subjectively believe that the patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Huawei has continued its infringing activities.  As such, Huawei willfully infringes the '416 patent.

76.     Huawei's infringement of the '416 patent has caused and continues to cause damage to NSN and NSN is entitled to recover from Huawei FRAND compensation as a result of Huawei's wrongful acts through the date of trial in an amount subject to proof at trial, and such other relief as may be appropriate, including specifically, but not limited to, an appropriate prospective royalty for any infringement by Huawei after judgment is entered.

77.     Huawei's infringement of the '416 patent is exceptional and entitles NSN to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

78.     NSN hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

79.     NSN respectfully requests that this Court enter judgment against Huawei as follows:

A.     That each of NSN's Patents-In-Suit has been and continues to be infringed by Huawei;

B.     That each of NSN's Patents-In-Suit is enforceable, eligible for patent protection, and not invalid;

C.     That Huawei's infringement of NSN's Patents-In-Suit has been willful;

D.     That NSN has complied with its legal obligation with respect to negotiating FRAND terms and conditions of licenses under the applicable IPR Policy;

E.     An award constituting an appropriate FRAND royalty for past infringement;

F.     An award of a mandatory, ongoing, prospective royalty on each future product sold by Huawei that is found to infringe one or more of NSN's Patents-In-Suit,

and on all future products that are not colorably different from products found to infringe by virtue of their compliance with the LTE standard;

G.     In the alternative, if no prospective royalty is granted, a permanent injunction preventing further infringement, contributory infringement, and inducement of infringement of NSN's Patents-In-Suit until and unless Huawei pays to NSN compensation for past infringement, and irrevocably commits to payment of FRAND compensation in the future;

H.     An award of pre-judgment interest and costs;

I.     An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

J.     A finding that this is an exceptional case and award to NSN of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

K.     Such other and further relief as this Court may deem just and proper.

Dated:  July 13, 2016                    Respectfully submitted,

                                         */s/ Deron R. Dacus*

                                         Deron R. Dacus (TX Bar No. 00790553)
                                         **THE DACUS FIRM**
                                         821 ESE Loop 323, Suite 430
                                         Tyler, TX 75701
                                         Telephone: 903-705-7233
                                         Facsimile: 903-581-2543
                                         Email: ddacus@dacusfirm.com

Patrick Flinn (GA Bar No. 264540) (pro hac pending)
John Haynes (GA Bar No. 340599)
Michael C. Deane (GA Bar No. 498195)
Nick Tsui (GA Bar No. 982502)
**ALSTON & BIRD LLP**
1201 W. Peachtree St.
Atlanta, GA 30309
Telephone:  404-881-7240
Email: Patrick.Flinn@alston.com
Email: John.Haynes@alston.com
Email: Michael.Deane@alston.com
Email: Nick.Tsui@alston.com

Michael J. Newton (TX Bar No. 24003844).
Derek Neilson (TX Bar No. 24072255)
**ALSTON & BIRD LLP**
2800 N. Harwood St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: Mike.Newton@alston.com
Email:  Derek.Neilson@alston.com

Thomas W. Davison (FL Bar No. 55687)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
Telephone: (202) 239-3933
Facsimile: (202) 654-4913
Email: Tom.Davison@alston.com

M. Scott Stevens (NC Bar No. 37828)
Ross Barton (NC Bar No. 37179)
**ALSTON & BIRD LLP**
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC  28280-4000
Telephone:  704-444-1000
Facsimile:  704-444-1111
Email: Scott.Stevens@alston.com
Email: Ross.Barton@alston.com

Marsha E. Diedrich (CA Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street
16th Floor

Los Angeles, CA 90071
Tel. (213)-576-1000
Fax (213)-576-1100
E-mail: Marsha.Diedrich@alston.com

*Attorneys for Nokia Solutions and Networks US LLC
and Nokia Solutions and Networks Oy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on July 13, 2016, to all counsel of record for HUAWEI TECHNOLOGIES CO. LTD. who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) and a copy has been sent by overnight delivery to HUAWEI DEVICE USA, INC., c/o its Registered Agent at CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201-3136.

*/s/ Deron R. Dacus*
Deron R. Dacus